We'll hear from you first. Good morning, Your Honors. Justin Howell on behalf of the City of Ashdown, Arkansas. Your Honors, this is a relatively straightforward case of statutory obstruction of interpretation. At issue is whether the District Court erred in determining that the City of Ashdown, Arkansas had standing to pursue claims under the Arkansas Video Service Act, as well as whether the District Court erred in applying the plain language of the so-called public internet exception to entities like Netflix and Hulu, who provide video programming over equipment and facilities located in the public rights of way via internet protocol technology. And I submit to you, Your Honors, that the answer to both of those questions is yes, the District Court erred. First, with respect to standing, Section 2319.210B provides that, except as otherwise stated in this subchapter, this subchapter shall not be interpreted to prevent a political subdivision from seeking clarification of its rights and obligations under federal or state law. This section clearly, under its expressed terms, evidences an intent from the Arkansas Legislature to allow political subdivisions to seek clarification of their rights under the Video Service Act, which is an Arkansas state law. That sounds to me a little like a savings clause, that it's trying to save other causes of action that may be available to municipalities, if any, but not the creation of an independent cause of action. Is that wrong? That was the reasoning of the District Court, Your Honor. We contend that by the plain language of the statute, it doesn't say that it was just preserving pre-existing causes of action under that provision for other statutes. It clearly says state law. This is a state law, and the City of Ashtown is seeking to clarify its rights under this state law. But even assuming that the District Court was correct, which we disagree with, we believe that the District Court erred in not implying a cause of action because we think that this provision of the statute clearly manifests an intent on behalf of the Legislature to invest rights in the municipalities in the state of Arkansas. And that is evidence to the fact that municipalities are granted the right to collect video service provider fees from video service providers like Netflix and Hulu, as well as rights granted that they can conduct audits, they can inspect the books and records of the video service providers to make sure that the fees are being calculated correctly, as well as engage in mediations with the video service provider. And so we clearly believe that the plain language of the statute was intended to create rights in favor of municipalities in the state of Arkansas. On both of those arguments, though, implied and expressed cause of action, I think this provision, well, let me just put it this way. There's a provision dealing with the commission being able to sue that's quite clear that the commission has a cause of action. I think that potentially does the express damage from your point of view because yours is not as clear, the so-called things that I call the savings clause. But doesn't that also make us doubt whether there's an implied cause of action? In other words, the Legislature set up a cause of action for someone in the statute and it just doesn't happen to be a municipality? Well, I think that is, again, the reasoning of the district court in the case. But the district court didn't address whether or not that provision provided the commission with the exclusive enforcement power under the statute. And, in fact, nowhere in that provision does it say that the Arkansas Public Service Commission has exclusive enforcement power. And there's case law in the state of Arkansas that we cite in our brief that states when it's not clear that that power is exclusive, that it doesn't foreclose other causes of action to supplement the commission's authority to enforce the statute. And so that's what we're seeking to do here, is not usurp the right of the commission to enforce the statute because the commission's authority under the statute is limited through actions in mandamus and actions in injunction. And so if the court were not to imply a cause of action in this case, the city of Ashdown and any other political subdivision would be left without any remedy at all for past due video service provider fees or presently due video service provider fees. And so what would happen is the construction that Netflix and Hulu urge would incentivize video service providers to simply not comply with the act because there is no penalty for past noncompliance. If they're told down the line that, hey, you're not in compliance with this statute and you have to comply, they just say, okay, we'll comply going forward. But again, there's no remedy for past due fees to the political subdivisions. And so that's why we believe that that interpretation of the statute clearly undercuts the purpose of the statute itself. It also flips the burden on the Public Service Commission to essentially be the watchdog or enforcement action or agency in this case when the statute itself clearly says that a video service provider shall not provide video service without first applying for authorization. And so the onus is on the video service provider to seek authorization to provide video service. And so that's why we believe that even if the court determines that there's not an express cause of action, the district court erred in not implying a cause of action. And so moving on to the second basis for the district court's decision is the so-called public Internet exception. And as stated in the amicus brief of the city of Crevecourt, Missouri, and Gwinnett County, they go through great detail about the Internet Tax Freedom Act and the fact that that is a federal statute that was designed to prevent companies or entities from taxing Internet access. And if you look at the legislative history of that act, as well as decisional law before the FCC, and even representations of Netflix itself, who has distinguished between pure content providers and entities that provide access to the Internet, like, for example, Internet service providers or ISPs, we believe that if you look at the plain language of the statute, as well as that legislative history, it clearly evidences an intent to apply that exception to the Internet service provider who provides access to other content, in addition to potentially video programming, but other content, email, information, and services over the public Internet. And the reason for that is pretty clear. It's because we don't want to tax the Internet service provider, who is technically under the plain language of the act, providing video programming through its equipment and wireline facilities in the public rights way, to be subject to the fees because they're not ultimately the creators of that content and they're not benefiting from the sale of that content. So why should they also be subject to the fees? And so, again, going back to the plain language of the statute, Netflix and Hulu do not provide access to email accounts as part of their service. They do not provide access to information as part of their service. They don't provide access to other services other than video programming. It's the entirety of their service. And so interpreting the statute in the way that the district court did renders portions of that definition meaningless, where it says part of the service, when, again, it's the entirety of their service. Is that fair to say, though, as someone who's had Netflix, they do more than just provide video. They catalog the video. There's things on there where you can have it select videos for you or suggest videos for you. When you're a subscriber, they send messages to you. Now, granted, that's over the Internet, but they tell you, hey, this new thing just came up. You might want to take a look at it. And so is it really just video? It seems to me like there's a lot going on there. I'm not entirely familiar with messages that they send, but I believe that virtually, and I don't think Netflix has really disputed this, that the entirety of the service that they provide is video programming. I mean, this issue isn't before the court, but it's comparable to that of broadcast television, because they're directly competing with traditional cable television with their services. I mean, they compete, for example, in Emmy Awards, which are awards for excellence in television. And so we believe that that's the distinction between ISPs and services like Netflix and Hulu. But also, Netflix and Hulu's construction of the Act would lead to absurd results and, I believe, render the Act obsolete within the next few years. And the reason for that is they talk about the impetus for the Act being AT&T's U-verse, which was a new technology at the time providing television over the Internet. But AT&T is moving away from that U-verse, and even the traditional cable companies are actually moving towards providing television over the Internet. AT&T's service, I believe, is called AT&T TV, and it's replacing their U-verse television. And so if you interpret the public Internet exception in the way that Netflix and Hulu urge, AT&T, even though they own, operate, and construct facilities in the public rights-of-way, which, again, Apelli's claim is required under the Act. We dispute that. But even though they have those facilities in the public rights-of-way, they would not be subject to the requirements of the Act because they're providing television over the Internet. And as those companies move towards that same model, which it's clearly heading in that direction, interpreting the public Internet exception in a way that just simply exempts all television over the Internet is going to render the Act obsolete, which couldn't have been the intention of the Arkansas legislature. I do think broadcast television is different because they don't provide the same services as Netflix and Hulu in terms of cataloging and things like that. But even let's suppose you're right, that it renders it obsolete. Should we sort of manipulate the statute, or is it the responsibility of the legislature to fix that problem, the fact that technology has changed over the last decade or two? Yeah, I think, Your Honor, one, the statute clearly indicates an intent by the legislator to apply to emerging technologies. There are references to future technologies in the plain language of the statute. And two, it's not this court's job to manipulate or change the wording of the statute. It's this court's job to apply the plain language of the statute. And if the legislature doesn't like the result, or if Netflix and Hulu don't like the result, they certainly have the wherewithal to lobby the legislature and change the law. And that's what should occur here if, in fact, they disagree with the interpretation of the statute in its plain language. I would be remiss if I didn't address the argument that they raised in the alternative, which is that because they don't construct, own, or operate facilities in the public rights way, they don't qualify as video service providers under the act. While the district court did not reach this issue, and this court does not need to reach this issue, if you look at the plain language of the definition of video service provider, it clearly says entities that provide video programming over equipment and facilities in the public rights way, regardless of the technology used, including internet protocol technology, are video service providers under the act. And so it talks about the provision of video service in that definition, as well as in other areas of the statute. It does not say that you need to own, operate, or construct facilities in the public rights way in order to be subject to the act. And while they make a big deal out of the fact that other provisions of the statute do speak to construction, operation, and maintenance of facilities in the public rights way, those provisions are clearly permissive. They say you must allow them to enter, or they may construct facilities in the public rights way. And so there's nothing that says that only those that construct, own, or operate facilities in the public rights way are subject to the requirements of the act. And in fact, the city of Ashdown, Arkansas is perfectly willing to allow Netflix and Hulu, if they ever need to, to enter the public rights way, to construct or operate facilities in the public rights way if they receive the authorization. And that's all that the statute is saying, is that if they ever desire to do so, that the city must allow them to do that. And there's simply no reason why, for example, Netflix claims that these various provisions render our interpretation of the statute completely. The construction is just completely thrown off by that, but it's simply not the case. If they don't need to use the public rights, or excuse me, not use, but physically place facilities in the public rights way, then they simply don't need to exercise their rights under those provisions of the statute. And so unless there are any further questions, Your Honors, I'd like to reserve the remainder of my time for rebuttal. Very well, you may do so. Thank you for your argument. All right, Mr. Garr, we'll hear from you. Thank you, Judge Colleton, and may it please the court. For two independent reasons, the district court properly dismissed this action. First, the city of Ashtown has failed to establish that it has a private right of action to maintain the suit for damages under the Arkansas Video Service Act. And second, even if it did, Netflix and Hulu are not subject to the Act's franchise fee provision because they do not operate or construct, maintain facilities in the public rights of way, and instead merely provide access to content through streaming over the public Internet. A groundswell of courts across the country, both state and federal, have reached similar conclusions in other lawsuits brought by municipalities like this, and there's no reason for this court to do any different. Most fundamentally, the city of Ashtown has not established that it has a private right of action to bring suit under the Act. There's no express provision of the Act that grants municipalities the right to bring enforcement actions. My friend referred to Section 210B of the Act, but as you recognize, Judge Strauss, correctly, that's a savings clause. It simply preserves existing rights. It doesn't grant any rights that didn't previously exist. And my friend did not point to any prior statute that granted municipalities a private right of action in this context. So the question for this court is whether or not to imply a right of action not found in the Act. This court and the Arkansas Supreme Court are appropriately reluctant to infer rights of action not expressed by law, and there's no reason for this court to do so here. In fact, inferring a private right of action would interfere with two express provisions in the Act and the scheme. The first is the fact that the legislature, as you noted, Judge Strauss, explicitly gave the Public Service Commission the authority to bring enforcement actions to compel compliance with the Act in 23-1-104. That was the express enforcement action that they had in mind, not actions by municipalities. And the second comes from the express purpose of the Act, and this is in the law itself, which was to ensure a scheme of uniform regulation of video service providers that ultimately would attract new video service providers to the state. Arming the hundreds of municipalities across the state with the ad hoc authority to bring enforcement actions against streaming services that they deem fit for such actions would directly disrupt the legislature's intent to establish a uniform regulation scheme. And that intent is further underscored by Section 207E of the Act, which explicitly gives to the Secretary of State the exclusive franchising authority under this statute. The legislature did not contemplate, either expressly or in any inferred sense, that municipalities would have the right to bring enforcement actions under this Act. Doing so would disrupt the scheme enacted by the legislature and enact a completely different scheme that would give municipalities authority that was not intended under the law. So this Court should hold that the municipality lacks a private right of action to maintain this suit, and that is frankly a sufficient basis to dispose of this appeal. Even if the municipality had a private right of action, its claim still fails. It fails in the most basic sense that Netflix and Hulu do not provide, operate, or construct facilities in the public rights of way. This Act, like many others like it, rests on the basic quid pro quo that this recognized in the Guidry case, that the ability to charge franchise fees is tied to the operation, construction, and maintenance of facilities in the public rights of way. Put it differently, if you dig in the city streets, you must pay. You're getting a benefit, and there's a franchise fee attached to that. Netflix and Hulu do not operate, maintain, construct, or install any facilities in the public rights of way. All they do is simply make video content available for streaming over the public Internet. And for that reason, they fall squarely within the public Internet exception of the Act in Section 202.15b. That Act was clearly intended to exclude from regulation services that are content simply streamed over the public Internet. And it squarely applies to a situation like this, where all Netflix and Hulu are doing is making content available for streaming. And in fact, this is confirmed by the city's own complaint in this case. Paragraphs 10 through 15, they make express that the way that end users obtain access to content from Netflix and Hulu is over broadband connection, is over the Internet, and is through an Internet service provider. And that confirms that this case fits squarely within the public Internet exception. Allowing and construing this Act, and ultimately we agree, this is a case about straightforward statutory construction. We just fundamentally agree with the result that stems from the plain terms of the statute. But holding that Netflix and Hulu are subject to the Act when they do not install, maintain, operate any facilities in the public right of way, and ultimately arming hundreds of municipalities across the state to bring enforcement actions on an ad hoc basis, would create a fundamentally different taxation scheme than the one enacted by the state of Arkansas. That scheme ultimately would result in more onerous taxation and higher fees for end users that were not intended by the state. Any such radical refashioning of this Act should come only at the hand of the state legislature, not this court. We agree completely that if there are changes to the technology that warrant any reconsideration of the matters covered by the Act, that is exclusively an issue for the state legislature and not for the federal courts. For those reasons, we would urge this court to affirm the district court's decision dismissing this case. All right. Very well. Thank you for your argument. All right. Thank you, Mr. Wells. Mr. Gee, we'll hear from you. Thank you. I just want to focus specifically on the wording of the statute. The statute is intended to apply to the distribution of video content in a particular way. The definition of video service is defined as the delivery of video programming to subscribers, and then it says primarily through equipment or facilities located in whole or in part, in, on, under, or over any public right of way. The two key concepts there are delivery and through facilities. It's often what's termed as a facilities-based kind of video service. Any doubt or any kind of question about what those terms mean is answered by looking at the provisions about how gross revenue is defined, or the fee provisions. In that section, when you read the parts of the statute together, the statute defines gross revenue as any, basically, consideration derived by the holder of a certificate of franchise authority from the operation of the video service provider's network. That reference makes it very clear that the statute is meant to apply to video service providers that have a network in the public rights of way. The statute goes on and defines network, defines provider's network as the optical spectrum wavelengths, bandwidth, or other current or future technological capacity used for the transmission of video programming over wire line directly to subscribers within the geographic area. What is that referring to? Well, the statute clearly applies to your traditional cable company, or to, for example, your AT&T, when they took fiber optic cables and went to each person's house and got a direct connection, and they were involved in the direct delivery of video content to individual subscribers. Admittedly, the statute says it's not limited by technology of delivery used, but it does require that direct delivery to subscribers. That's where this complaint fails as a matter of law, because the complaint admits Hulu does not have its own network, does not have a video provider network in the public rights of way, and it's not itself engaged in the delivery directly to subscribers of any video content. What happens if you have, though, and this is where you've lost me a little bit, what if you have a video provider like Hulu that decides I'm going to get some third party to build a right-of-way, and so it's not like a cable service provider where the cable service provider has the right-of-way and also provides video content? Would it just not be covered by the statute at that point? I think to the extent that it's basically the operator, so to speak, of the network is doing it on behalf of Hulu, under normal agency doctrine, I think it would be considered the video service provider's network. But here the facts are even clearer. The facts allege that it's not someone acting on our behalf that's providing the delivery. It's the subscriber's choice of ISP that actually connects them to any content that we make available on the public Internet. And so not only do we clearly fall outside of the mandate in the statute, because we don't have our own network that's delivering directly to subscribers, there's also the public Internet exclusion that makes it crystal clear. And on that one, what it says is that any video content that's delivered as part of a service that allows people to access content, information, etc. over the public Internet is excluded. Now what's the purpose of that? When the Arkansas legislature adopted this language in 2013, it wasn't doing it on a blank slate. This language, as the appellants themselves say, ultimately comes from the federal statute from ITFA, and by then ITFA and that language had already been construed. It had been construed, for example, by the Ninth Circuit in Gordon that says that language is not limited to ISPs. It's broad enough to include people like Facebook or MySpace or online content services that allow you to access that. Moreover, Congress had specifically amended ITFA in 2007 so that there are two definitions in the federal statute. There's the broader one and the narrower one. And the reason there are two of them is because ITFA ultimately contains two prohibitions. It has a moratorium on taxes on access itself of an ISP, and it also prohibits multiple or discriminatory taxes more broadly. The broad language is the language that's used in the Arkansas statute. Congress added a narrower definition that talks specifically about services that allow you to access the Internet to access information, content, etc. It's telling that what Arkansas chose was the broad definition and the broad wording, not the narrow one. So the idea that the exclusion only applies to ISPs is just rejected by the precedent that existed at the time and the clear choice to use the broad definition, not the one Congress added in to refer only to ISPs. But even if we construe it to only apply to ISPs, which is really all the argument they're making right now, it doesn't help them under the statute. Under the definition of video service, it excludes any video content provided as part of a service, even if that service is the ISP's service. It's excluded because the problem here in this case is the only facility that they allege that exists in the public rights of way is the ISP's facilities that allow their subscribers to connect to the Internet. If the only service and the only delivery of any video content through the public rights of way is part of that service, well, ISP's service is what's excluded. There's nothing in the exclusion that requires the service to be our service. So the admission that the only facilities are ISP facilities, on its face already, brings you right into the exclusion. The point is this. The Arkansas legislature adopted the broad language from ITFA because this statute was never intended to regulate just online access to the Internet. To any information that's on the Internet. We all know that just Internet access in and of itself, accessing content online, is a very different beast when it comes to policy. A very different issue in terms of its implications and how to do that in a fair way. Arkansas wanted all that out of the statute. It excluded it. It wanted to focus on what we call facilities-based video service providers. And the fact that Hulu doesn't have any facilities. It only puts its content online so people can access it however they want to connect to the Internet. That takes you out of the realm of the statute. Now, they may disagree, ultimately, but I think that's really a fight with the legislature, or at the very least, the Public Service Commission. Because the whole point of the statute was not to allow individual municipalities, just because they have a different view, to be able to suddenly create a little bit of uncertainty or chaos. There's supposed to be one voice, and it's not an individual city in this situation. Thank you, Your Honor. Very well. Thank you for your argument. Mr. Howell, we'll hear from you in rebuttal. Your Honor, I think the notion that the city of Ashdown is trying to completely upend the franchising system in Arkansas is a bit of hyperbole. The city of Ashdown isn't attempting to create a system where every single city or municipality in the state has the right to bring their own actions. But rather, we're simply seeking to require a declaration to require Netflix and Hulu to apply and receive authorization from the Secretary of State. We're not asking that every municipality be granted the right to issue its own separate franchise to these entities. But simply apply and receive the authorization so that they then have to pay the required video service provider fees. And then the cities themselves will have the rights to audit and take other actions that the statute gives them to ensure that they're receiving those fees. So this notion that this case is going to involve the creation of a completely different franchising scheme, I think is a bit overstated. All right. Very well. Thank you for your argument. The case is submitted.